UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IRIS MENDEZ-ARROYO,

        Plaintiff,

v.                                CASE NO. 6:23-cv-245-RBD-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an

administrative decision regarding her application for a period of disability

and disability insurance benefits ("DIB").  Following administrative hearings

held on March 22, 2022 and June 28, 2022, the assigned Administrative Law

Judge ("ALJ") issued a decision, finding Plaintiff not disabled from December

1, 2018, the alleged disability onset date, through August 12, 2022, the date

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed.R.Civ.P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy." *Id.*  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  *See* Fed.R.Civ.P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1.

of the ALJ's decision.[2]  (Tr. 17-79.)  Based on a review of the record, the briefs, and the applicable law, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I.     Standard of Review

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004).  Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the

---

[2] Plaintiff had to establish disability on or before September 30, 2024, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 18.)

decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.   Discussion

### A.   Issues on Appeal

Plaintiff raises two issues on appeal.  First, she argues that the ALJ's Residual Functional Capacity ("RFC") assessment is not supported by substantial evidence, because the ALJ failed to properly consider the consultative opinions of Dr. Alex Perdomo, whose physical examination findings were allegedly supported by Dr. Roberto Gonzalez's prior consultative examination and by Dr. Jose A. Torres's examination findings. (Doc. 25 at 11-17.)  According to Plaintiff, the ALJ ignored the consistency among the opinions of Drs. Perdomo, Gonzalez, and Torres, and "reversibly erred in [her] rejection of Dr. Perdomo's opinion by failing to adequately address [the] supportability and consistency factors."  (*Id.* at 17-18.)  Plaintiff argues that the ALJ's error cannot be deemed harmless, because "it is unclear whether the Vocational Expert would have indicated that the claimant could perform other work in the national economy if the ALJ accounted for . . . all of the limitations as outlined by Dr. Perdomo."  (*Id.* at 18.)

3

Second, Plaintiff argues that the ALJ failed to adequately consider her subjective complaints, because the ALJ did "not offer accurate and specific reasons for undermining" her testimony.  (*Id.* at 18-21.)  Plaintiff explains that "although the ALJ does point out some medical evidence that she finds does not support the claimant's 'allegations of physical health symptom severity,' such as negative imaging studies of the claimant's neck and hands, the ALJ fails to note that the claimant has fibromyalgia and how that condition could impain [sic] the claimant's pain levels."  (*Id.* at 22-23.)

Defendant responds that the ALJ properly evaluated the persuasiveness of the medical opinions of record and, to the extent Plaintiff asserts otherwise, she is asking the Court to impermissibly reweigh the evidence.  (Doc. 26 at 1, 6.)  Defendant explains in relevant part:

> The ALJ correctly considered Alex Perdomo, M.D.'s, September 15, 2021, consultative examiner's opinion for a reduced range of less than sedentary work and explained why she found it was not generally persuasive. . . . The ALJ listed numerous discrepancies between the doctor's exam findings and his significantly limited RFC assessment. . . . Addressing the consistency factor, the ALJ explained that Dr. Perdomo's less than sedentary RFC assessment was inconsistent with the [State agency medical consultants'] limited light RFC findings.

(*Id.* at 7-9 (internal citations omitted).)  Defendant adds that the ALJ properly assessed the prior administrative findings of State agency medical consultants, Kerri Aaron, M.D. and Sunita Patel, M.D.; the initial consultative examining opinion of Dr. Gonzalez; and the findings of Dr.

4

Torres.  (*Id.* at 10-14.)

Defendant also argues that the ALJ properly considered Plaintiff's subjective complaints and incorporated them into her RFC assessment.  (*Id.* at 1.)  To the extent the ALJ discounted some of those complaints, Defendant states the ALJ gave detailed reasons for doing so.  (*Id.* at 15.)  Defendant adds that the ALJ expressly assessed Plaintiff's fibromyalgia and chronic pain complaints.  (*Id.* at 18.)

**B.    Standard for Evaluating Opinion Evidence and Subjective Symptoms**

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. § 404.1520(a)(3).  With regard to medical opinions, the rules in 20 C.F.R. § 404.1520c apply to claims filed on or after March 27, 2017.[3]  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 F.R. 5844-01, 2017 WL 168819 (Jan. 18, 2017).  Because Plaintiff's claim was filed after March 27, 2017, the Court applies the revised rules and regulations in effect at the time of the ALJ's decision.

Under the revised rules and regulations, the ALJ need "not defer or give any specific evidentiary weight, including controlling weight, to any

---

[3] The rules in 20 C.F.R. § 404.1527 apply to claims filed before March 27, 2017.

medical opinion(s) . . . , including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a). The ALJ will articulate in the administrative decision how persuasive all of the medical opinions are in the case record, 20 C.F.R. § 404.1520c(b), but need not articulate how evidence from non-medical sources has been considered, 20 C.F.R. § 404.1520c(d).

"When a medical source provides one or more medical opinions," those opinions will be considered "together in a single analysis," using the factors listed in 20 C.F.R. §§ 404.1520c(c)(1) through (c)(5), as appropriate. 20 C.F.R. §§ 404.1520c(a), (b)(1). The ALJ is "not required to articulate how [he/she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1).

When evaluating the persuasiveness of medical opinions, the most important factors are supportability[4] and consistency.[5] 20 C.F.R. §§ 404.1520c(a), (b)(2). Thus, the ALJ "will explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the determination or decision but is not required to explain how

---

[4] "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1).

[5] "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

he/she considered the rest of the factors listed in 20 C.F.R. § 404.1520c(c).  20

C.F.R. § 404.1520c(b)(2).  As explained recently by another court in this

District:

> Overall, supportability relates to the extent to which a medical
> source has articulated support for the medical source's own
> opinion, while consistency relates to the relationship between a
> medical source's opinion and other evidence within the record.  In
> other words, the ALJ's analysis is directed to whether the
> medical source's opinion is *supported* by the source's own records
> and *consistent* with the other evidence of record—familiar
> concepts within the framework of social security litigation.

*Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832,

*3 (M.D. Fla. Apr. 6, 2021) (emphasis in original) (report and

recommendation adopted by 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021)).

When "two or more medical opinions . . . about the same issue are both

equally well-supported . . . and consistent with the record . . . but are not

exactly the same," the ALJ will articulate how he/she considered the other

most persuasive factors listed in 20 C.F.R. §§ 404.1520c(c)(3) through (c)(5),

which include a medical source's relationship with the claimant,[6]

specialization, and other factors.[7]  20 C.F.R. § 404.1520c(b)(3).

---

[6] The relationship with the claimant factor combines consideration of the
following issues: the length of the treatment relationship, the frequency of the
examinations, the purpose of the treatment relationship, the extent of the
treatment relationship, and the examining relationship.  20 C.F.R. §§
404.1520c(c)(3)(i)-(v).

[7] The other factors may include: the medical source's familiarity with the
other evidence in the claim; the medical source's understanding of the disability

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he [or she] must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

Once a claimant establishes that her subjective symptom is disabling through "objective medical evidence from an acceptable medical source that shows . . . a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms," pursuant to 20 C.F.R. § 404.1529(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also* SSR 16-3p[8] (stating that after the ALJ finds a

---

program's policies and evidentiary requirements; and the availability of new evidence that may render a previously issued medical opinion more or less persuasive.  20 C.F.R. § 404.1520c(c)(5).

[8] SSR 16-3p rescinded and superseded SSR 96-7p, effective March 28, 2016, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
>
> . . .
>
> In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[9] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

---

[9] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 16-3p.

. . .
        In evaluating an individual's symptoms, our adjudicators
will not assess an individual's overall character or truthfulness in
the manner typically used during an adversarial court litigation.
The focus of the evaluation of an individual's symptoms should
not be to determine whether he or she is a truthful person.
Rather, our adjudicators will focus on whether the evidence
establishes a medically determinable impairment that could
reasonably be expected to produce the individual's symptoms and
given the adjudicator's evaluation of the individual's symptoms,
whether the intensity and persistence of the symptoms limit the
individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms

and to follow treatment once it is prescribed" will also be considered "when

evaluating whether symptom intensity and persistence affect the ability to

perform work-related activities." *Id.* "[I]f the frequency or extent of the

treatment sought by an individual is not comparable with the degree of the

individual's subjective complaints, or if the individual fails to follow

prescribed treatment that might improve symptoms, [the adjudicator] may

find the alleged intensity and persistence of an individual's symptoms are

inconsistent with the overall evidence of record." *Id.* However, the

adjudicator "will not find an individual's symptoms inconsistent with the

evidence in the record on this basis without considering possible reasons he

or she may not comply with treatment or seek treatment consistent with the

degree of his or her complaints." *Id.* In considering an individual's treatment

history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the appropriate treatment for or the need for consistent treatment.

*Id.*

## C.   Relevant Evidence of Record

### 1.   Jose A. Torres, M.D.'s Treating Records

On December 21, 2021, Dr. Torres saw Plaintiff as a new patient for complaints of low back, mid back, and neck pain radiating to her arms and legs. (Tr. 898.) The physical examination was unremarkable except for the following:

Exam revealed right posterior neck, left posterior neck, right lower back and left lower back muscle spasm and tenderness. . . . Neurological: Bilateral brachioradialis reflex, bilateral patellar reflex, bilateral Achilles reflex, bilateral biceps reflex and bilateral triceps reflex is 2/4. C5 dermatome and L5 dermatome

> demonstrates [sic] pin prick sensation decreased and light touch
> sensation decreased.  Range of motion: Cervical [range of motion]
> shows decreased flexion with pain, decreased extension without
> pain . . . .   Range of motion: Lumbar [range of motion] shows
> decreased flexion without pain, decreased extension without pain
> . . . .

(Tr. 899-900.)  Plaintiff was diagnosed with radiculopathy in the lumbar and

cervical region, fibromyalgia, and chronic pain syndrome.  (Tr. 898.)

On April 12, 2022, Dr. Torres saw Plaintiff for neck pain.  (Tr. 955.)

The following pertinent history was recorded:

> Ms. Mendez Arroyo was referred due to a[n] 11[-]year history of
> cervical pain radiating into her arms.  The neck pain radiates
> into the shoulders, arms[,] and hands with muscle weakness,
> tingling and numbness.  Ms. Mendez Arroyo has not responded to
> conservative management, including medication management
> and home exercise from 01/10/22 through 04/10/22.  The pain is
> rated [as an] 8 on a scale of 1-10.  The pain is continuous and
> causing functional disability.  The first cervical epidural injection
> on 03/01/2022 reduced the pain by 75% and improved functional
> ability for one week.  The second cervical epidural injection on
> 04/12/2022 reduced the pain by 85% and improved functional
> ability for two weeks.  The pain has returned at a rate of 7 on a
> scale of 1-10 and [is] causing functional disability.  A Third
> Cervical Epidural Steroid injection under fluoroscopic guidance
> in office is requested.  She is actively engaged in home exercise
> plan (HEP) including medication management and home exercise
> from 05/01/22 through 06/10/22.  Furthermore, she is unable to
> tolerate physical therapy.

(*Id.*)  The physical examination was unremarkable except for the following:

> Exam revealed right posterior neck, left posterior neck, right
> lower back and left lower back muscle spasm and tenderness. . . .
> Neurological: Bilateral brachioradialis reflex, bilateral patellar
> reflex, bilateral Achilles reflex, bilateral biceps reflex and
> bilateral triceps reflex is 2/4.  C5 dermatome and L5 dermatome

demonstrates [sic] pin prick sensation decreased and light touch
sensation decreased.

(Tr. 957.)  Plaintiff was diagnosed with radiculopathy in the lumbar and

cervical region, fibromyalgia, chronic pain syndrome, and other cervical disc

displacement at the C5-C6 level.  (Tr. 956.)

On May 24, 2022, Dr. Torres saw Plaintiff again for a follow-up.  (Tr.

970.)  The physical examination was unremarkable except for the following:

> Exam revealed right posterior neck, left posterior neck, right
> lower back and left lower back muscle spasm and tenderness.  . . .
> Neurological: Bilateral brachioradialis reflex, bilateral patellar
> reflex, bilateral Achilles reflex, bilateral biceps reflex and
> bilateral triceps reflex is 2/4.  C5 dermatome and L5 dermatome
> demonstrates [sic] pin prick sensation decreased and light touch
> sensation decreased.

(Tr. 972.)  The same diagnoses were assessed as during the previous visit.

(Tr. 970.)

## 2.   Roberto Gonzalez, M.D.'s Examining Opinions

On March 13, 2021, Dr. Gonzalez examined Plaintiff at the request of

the Florida Division of Disability Determination.  (Tr. 570.)  He noted that

Plaintiff "arrived unassisted, accompanied by [her] husband, [and] used

nothing for ambulation assistance."  (*Id.*)  Under Functional Status, Dr.

Gonzalez noted that Plaintiff was able to sit/stand/walk with difficulty and

was unable to drive.  (*Id.*)  Plaintiff exhibited gait abnormality, paraspinal

muscle tenderness, and was positive for, *inter alia*, myalgias, arthralgias,

headaches, numbness, tingling, weakness, cold intolerance, and fatigue. (Tr. 571-73.) Her strength was 3/5 in all extremities; grip strength was 4/5; and upper extremity dexterity was 4/5. (Tr. 572.) Plaintiff was able to do all of the following with both hands, but with difficulty: pinch, grasp, button a shirt, turn a door knob, and open a jar. (*Id*.) A straight leg raising test in a seated position produced mild pain bilaterally. (*Id*.) Plaintiff was unable to get on and off the examination table, walk on heels/toes, squat, and rise. (*Id*.) Her range of motion was reduced in the lumbar spine. (Tr. 573.)

Dr. Gonzalez diagnosed Plaintiff with, *inter alia*, lumbar degenerative disc disease, bilateral carpal tunnel syndrome, fibromyalgia, lumbar bulging discs, cervical and lumbar muscle spasms, and bilateral arm and leg paresthesia including hands and feet. (Tr. 574.) In the Medical Source Statement, Dr. Gonzalez opined as follows:

> Based on the physical examination conducted today, the clinical findings are as follows:
> -Abilities: Patient is limited in [the] upper body bathing and dressing. Patient is limited in functional mobility at a reasonable pace, she will likely need further reevaluation upon complete healing from acute issues. Physical activity can [be] perform[ed] occasionally.
>
> -Limitations: Patient is limited in [the] lower body bathing and dressing, mostly due to non-weight bearing status. Patient's ambulation distance is limited, most likely due to non-weight bearing status, and needs to be reevaluated at a later time. . . .
>
> Patient's available medical records were reviewed before the exam.

14

(*Id.*)

### 3.    Alex C. Perdomo, M.D.'s Examining Opinion

On September 15, 2021, Dr. Perdomo examined Plaintiff at the request of the Florida Division of Disability Determination.  (Tr. 845-50.)  Plaintiff's chief complaint was chronic back and diffuse joint pain.  (Tr. 845.)  The following pertinent history was recorded:

> [Plaintiff] gives a 10 years [sic] history of back and diffuse joint pain stating that she was diagnosed early in the course with fibromyalgia.  She has been through physical therapy[,] chiropractic manipulation, intra-articular cortisone injections[,] and trigger point injections resulting in temporary pain relief.  She has been seen by a rheumatologist claiming that her symptoms have gotten progressively worse in the last 3-4 years to the point where she had to quit her clerical job three years ago.  She claims being unable to stand, walk or sit for more than 15-20 minutes at a time, has limited use of the hands[,] and is unable to squat or kneel.  She complains of bilateral lower extremity radicular symptoms, but denies any urinary bladder or bowel incontinence.

(*Id.*)

On physical examination, Plaintiff was in no acute distress, she was observed walking down the hallway without any difficulty and without requiring an assistive device for ambulation, she was sitting comfortably during the exam, and was able to get on and off the examining table without any problems.  (*Id.*)  The rest of the examination was normal, except:

> Range of motion of [the] upper extremities affected at the level of the shoulders with abduction [sic] limited to 90 degrees.  Full

15

range of motion of the hands although movements were painful with bilateral hand grip strength decreased to 4/5 due to pain. Painful bilateral wrist and elbow range of motion was noticed. Full range of motion of [the] lower extremities although painful bilateral knee and ankle movement [sic] seen. She was unable to squat due to complaints of bilateral ankle, bilateral knee[,] and lower back pain.

. . . Range of motion of the cervical spine was decreased with forward flexion and extension 30 degrees, lateral flexion 30 degrees[,] both right and left, rotation 45 degrees[,] both right and left. Thoracolumbar spine range of motion was significantly decreased with forward flexion [sic] 40 degrees, extension 0 degrees, lateral flexion and rotation 10 degrees[,] both right and left. Positive bilateral straight leg raise was obtained in both supine and sitting position.

. . . Grip strength was decreased to 4/5[,] both right and left due to pain. . . .

(Tr. 846; *see also* Tr. 848-50 (range of motion report form).)

Dr. Perdomo's impression included, in relevant part,[10] a history of chronic neck pain with moderate musculoskeletal functional limitation on physical exam; a history of chronic lower back pain with severe musculoskeletal functional limitation on physical exam and bilateral lower extremity radiculopathy; a history of diffuse joint pain with moderate musculoskeletal functional limitation on physical exam of shoulders as well as painful bilateral hand, bilateral wrist, bilateral elbow, bilateral knees, and bilateral ankle movement; and a history of palpitations. (Tr. 846.) Dr.

_____

[10] Plaintiff's mental impairments are not pertinent to this appeal and, therefore, are not addressed in this Report.

Perdomo's recommendation included the following:

> The patient will benefit from more aggressive physical therapy and home exercise program for back and general conditioning. She can stand and walk for two to three hours a day in an eight-hour workday with normal breaks. She can sit for three to four hours a day in an eight-hour workday with normal breaks. She can occasionally lift and carry, but should limit the weightlifting to no more than 5 pounds. She should also avoid repetitive bending, stooping, crouching, squatting[,] or kneeling. No assistive device for ambulation was required. Due to the painful bilateral hand movement, she should avoid repetitive use of the hands including gripping maneuvers. She needs adequate continuity of care for proper management of her other chronic disease.

(Tr. 846-47.)

### 4.    State Agency Non-Examining Consultants' Opinions

On May 12, 2021, after reviewing the records available as of that date, Kerri Aaron, M.D. completed a Physical RFC Assessment of Plaintiff's functional abilities. (Tr. 108-12.) Dr. Aaron opined, *inter alia*, that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently; could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday; could frequently balance, stoop, kneel, crouch, crawl, and climb ramps/stairs; could occasionally climb ladders, ropes, and scaffolds; and should avoid concentrated exposure to extreme cold/heat and hazards. (Tr. 108-10.)

On September 20, 2021, Sunita Patel, M.D. completed a Physical RFC

17

Assessment of Plaintiff's functional abilities.  (Tr. 122-24.)  Dr. Patel opined, *inter alia*, that Plaintiff could lift and/or carry 20 pounds occasionally and ten pounds frequently; could stand and/or walk for about six hours and sit for about six hours in an eight-hour workday; could frequently balance, kneel, crawl, and climb ramps/stairs; and could occasionally stoop, crouch, and climb ladders, ropes, and scaffolds.  (Tr. 122.)

### D.   The ALJ's Decision

At step two of the sequential evaluation process,[11] the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar degenerative disc disease, bilateral carpal tunnel syndrome, fibromyalgia, inflammatory poly-arthropathy/positive antinuclear antibodies ("ANA"), and chronic pain syndrome.  (Tr. 20.)  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  (Tr. 23.)  The ALJ stated that although fibromyalgia and chronic pain syndrome were not listed impairments, she had "considered the effect of these conditions in combination with her other impairments."  (Tr. 25.)

Then, before proceeding to step four, the ALJ determined that Plaintiff

---

[11] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

had the RFC to perform light work with limitations, as follows:

> The claimant can never climb ladders, ropes, or scaffolds[,] and
> can occasionally climb ramps and stairs, balance, crouch, kneel,
> stoop, and crawl.  She must have the ability to alternate between
> sitting and standing, at her option, every 30 minutes for 1-2
> minutes so long as she is not off task or has to leave the vicinity
> of the workstation.  With the bilateral upper extremities, she can
> frequently reach overhead, push and/or pull, handle, finger, and
> feel.  With the bilateral lower extremities, she can frequently
> push and/or pull or operate foot controls.  She can have occasional
> exposure to vibrations.  She can have occasional concentrated
> exposure to extreme cold, heat, and humidity.  She cannot work
> around unprotected heights.  The claimant can understand,
> remember, and carry out simple, routine tasks but not [at] a
> production rate pace such as [sic] required working on an
> assembly line.  She can make judgments on simple work and
> respond appropriately to usual work situations where duties are
> predictable and short cycle[,] and handle occasional changes in a
> routine work setting.

(*Id.*)  The ALJ "considered all symptoms and the extent to which these

symptoms [could] reasonably be accepted as consistent with the objective

medical evidence and other evidence."  (*Id.*)  She also considered the medical

opinions and prior administrative medical findings.  (*Id.*)  In addition, the

ALJ accounted for all impairments, both severe and non-severe, in the RFC

"as necessary taking into account the totality of the record."  (Tr. 20.)

The ALJ determined that although Plaintiff's medically determinable

impairments could reasonably be expected to cause some of her alleged

symptoms, her statements concerning the intensity, persistence, and limiting

effects of those symptoms were "not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in [the]

decision." (Tr. 27.) The ALJ summarized Plaintiff's testimony as follows:

> At the hearing, the claimant testified she has fibromyalgia which causes all over pain and she also alleged spasms and pain in her neck and shoulders related to herniated discs. The claimant alleged she can walk for 15 minutes at a time before needing to rest and she can sit for 15 to 20 minutes at a time. The claimant alleged difficulty with bending from the waist down. She also reported difficulty with numbness in her hands and feet[,] and reported that she is unable to lift even a gallon of milk. She also alleged pain with reaching overhead, although she admitted she is able to wash her hair.
>
> She explained that she lives on the second floor in a townhouse and has to slowly go up and down the stairs due to numbness. She explained she lives with her spouse and adult daughter. The claimant testified her daughter performs the cooking and many of the chores. She alleged that if she helps her daughter with chores[,] she sometimes has to be seated. During the day, the claimant alleged she showers, has breakfast (her daughter prepares), takes medications, and lays in pain due to pain and fatigue from medications. The claimant testified when she lays down, she is sleeping most of the time and reported she can only watch sit [sic] for 10 to 15 minutes at a time and then has to change positions and she loses concentration.
>
> The claimant also testified that she does go to the grocery store when needed for medications and groceries with her husband. . . .
>
> Regarding pain symptoms, the claimant alleged she is prescribed pain medications, which help a little[,] and she recently underwent an injection, which she alleged did not help that much.

(Tr. 26.)

The ALJ also addressed the objective medical evidence and opinions of

record, including the March 13, 2021 consultative examination findings by

Dr. Gonzalez, the September 15, 2021 consultative examination findings by

Dr. Perdomo, and the State agency reviewing doctors' opinions.  (Tr. 27-31.)

Dr. Gonzalez's assessment was not found to be persuasive for the following

reasons:

> Dr. Gonzalez's assessment has the claimant as non-weight
> bearing, but there is very limited evidence that the claimant was
> ever non-weight bearing during the adjudicated period and Dr.
> Gonzalez himself says she presented without an ambulatory aide
> for the evaluation, and she denied using an assistive device,
> suggesting that she was able to ambulate.  (See 15F/2.)  Further,
> Dr. Gonzalez finds the claimant has reduced strength in her
> extremities, which is inconsistent with her other exams of record,
> which support normal strength.  (See 20F/14-15 and 32F/2-9).
> Additionally, his assessment is vague in nature and not
> specifically stated in functionally relevant terms and he also
> recommended a follow-up assessment based on her acute issues
> at the time of the exam.

(Tr. 28.)

The ALJ then found that Dr. Perdomo's assessment was not well

supported by his examination findings.  (Tr. 29.)  The ALJ explained:

> [F]or example, he finds the claimant has normal (5/5) motor
> strength, normal gait, normal sensation, and a normal
> neurological exam, but restricts the claimant to no more than 5
> pounds of lifting without an explanation of any kind to support
> such a significant weightlifting restriction.  Moreover, Dr.
> [Perdomo] limited the claimant to no more than 2 to 3 hours of
> walking and standing in an 8-hour day, but again, did not
> provide a rationale for this level of limitation, considering that he
> found on exam that the claimant has normal lower extremity
> strength and normal gait and neurological findings.  Further, Dr.
> [Perdomo's] assessment is inconsistent with the State agency

findings of record, who do provide specific functional analysis to support their overall findings.  For these reasons, Dr. [Perdomo's] assessment is not found to be generally persuasive.  However, it is noted, based on his finding with regard to slightly reduced grip strength (4/5) and concerns regarding repetitive use of the hands, the [ALJ] has incorporated a limitation in the [RFC] restricting the claimant to frequent handling, fingering, and feeling.

(*Id.*)

In addressing the State agency reviewing doctors' opinions, the ALJ

stated that their "findings were well supported with citations to the medical

record."  (*Id.*)  The ALJ added:

These assessments restricting the claimant to light exertional level work are found to be generally supported by the claimant's limited and generally conservative treatment and are also consistent with the claimant's findings on exam that reflect findings of generally normal strength and normal gait with generally normal range of motion of the upper and lower extremities.  (5F/3-6, 11F/10, 24F, 29F/5-7, and 32F/6-9).  However, based on later submitted evidence and the claimant's testimony, the undersigned finds that greater postural limitations and manipulative limitations are necessary to accommodate the claimant's severe impairments, including bilateral carpal tunnel syndrome, cervical and lumbar degenerative disc disease, and pain secondary to fibromyalgia.  Furthermore, considering the claimant's testimony regarding difficulty with prolonged sitting and standing due to pain, the [ALJ] has also incorporated a sit/stand allowance into the [RFC].  For these reasons, overall, the [ALJ] finds the State agency assessments to be only partially persuasive.

(Tr. 29-30.)

In summary, the ALJ found that Plaintiff's allegations were "broader

and more restricted than [what was] established by the medical evidence."

22

(Tr. 30.)  The ALJ added:

> The claimant's complaints have not been completely dismissed,
> but rather, have been included in the [RFC] assessment, to the
> extent that they are consistent with the evidence as a whole.
> Specifically, based on her impairments, including lumbar and
> cervical impairments, fibromyalgia, bilateral carpal tunnel
> syndrome, inflammatory poly[-]arthropathy/positive ANA, and
> chronic pain syndrome, she has been limited to light exertional
> level work with postural and climbing limitations.  Additionally,
> considering the claimant's cervical impairments, carpal tunnel
> syndrome, and fibromyalgia, the claimant has been further
> limited to frequently reaching overhead, pushing and/or pulling,
> handling, fingering, and feeling.  With the bilateral lower
> extremities, based on her lumbar impairment and fibromyalgia,
> she can frequently push and/or pull or operate foot controls.
> Moreover, considering her positive ANA findings and poly[-]
> arthropathy in combination with her chronic pain syndrome, the
> [ALJ] has also limited the claimant to occasional concentrated
> exposure to extreme cold, heat, and humidity.  Moreover,
> considering all of her severe and non-severe impairments, the
> claimant has been further restricted to avoiding all exposure to
> unprotected heights and to occasional exposure to vibrations.
> Furthermore, as discussed above, due to her chronic pain
> symptoms, fibromyalgia, and cervical and lumbar degenerative
> disc disease, and considering the claimant's testimony regarding
> difficulty with prolonged sitting or standing, the claimant has
> been accommodated with an allowance to shift from a sitting to a
> standing position every 30 minutes for 1 to 2 minutes as long as
> she is not off task or has to leave the vicinity of the workstation.

(*Id.*)

The ALJ also stated that the record did not fully corroborate Plaintiff's

allegations of physical health symptom severity.  (Tr. 31.)  She explained:

> As detailed above, the record supports the claimant participated
> in outpatient conservative treatment (pain medication and
> injections) for her lumbar and cervical spine pain[,] and she
> participated in medication treatment for fibromyalgia and her

chronic pain syndrome.  No further or more aggressive treatment
is noted for these impairments during the adjudicated period.
The record also supports, that although the claimant reported
she spends most of her days in bed or lying down due to pain, her
objective findings on exam revealed mild lumbar degenerative
disc disease (18F/15) and evidence of degenerative disc disease at
C5-C6[,] but showed no evidence of stenosis (3F/6).  Imaging
studies of her hands/shoulders throughout the adjudicated period
were largely negative (See 18F/18-19 and 25F/22-23).  Further,
on exam, other than one consultative exam noting reduced
extremity strength (15F), the claimant was generally found to
have had normal strength with a slightly reduced handgrip due
to pain (4/5), normal gait, and generally normal sensation,
reflexes, and neurological findings.  (5F/3-6, 11F/10, 24F, 29F/5-7,
and 32F/6-9).

(*Id.*)

Then, at step four, the ALJ determined that Plaintiff was unable to
perform her past relevant work of legal secretary.  (*Id.*)  At the fifth and final
step of the sequential evaluation process, considering Plaintiff's age,
education, work experience, RFC, and the testimony of the Vocational Expert,
the ALJ determined that there were jobs existing in significant numbers in
the national economy that Plaintiff could perform, such as Hand Packer
(DOT No. 559.687-074), Small Product Assembler (DOT No. 739.687-030),
and Garment Folder (DOT No. 369.687-018).  (Tr. 32.)  Therefore, the ALJ
concluded that Plaintiff was not disabled from December 1, 2018 through
August 12, 2022.  (Tr. 33.)

### E.    Analysis

The Court finds that the ALJ's decision is based on correct legal

standards and is supported by substantial evidence in the record.  First, the ALJ properly evaluated the medical opinions under the new SSA rules and regulations and her findings are supported by substantial evidence.  "While the ALJ may not have used the words 'supportability' and 'consistency,' the ALJ's discussion of [the medical] opinions and findings regarding the record was based on those factors."  *Cook*, 2021 WL 1565832 at *5; *see also Thaxton v. Kijakazi*, No. 1:20-cv-616-SRW, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022) (stating that "the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record"); *cf. Cueva v. Kijakazi*, No. 1:20-cv-407, 2021 WL 4192872, *5 (E.D. Cal. Sept. 15, 2021) ("An ALJ need not recite any magic words to reject a physician's opinion where the record reveals specific, legitimate inferences that may be drawn from the ALJ's opinion justifying the decision not to adopt a physician's opinion.").

Here, after setting forth Dr. Perdomo's opinions, the ALJ stated she did not find them to be generally persuasive because they were "not well supported by [his] findings on exam." (Tr. 29.)  The ALJ explained:

> [F]or example, [Dr. Perdomo] finds the claimant has normal (5/5) motor strength, normal gait, normal sensation, and a normal neurological exam, but restricts the claimant to no more than 5 pounds of lifting without an explanation of any kind to support such a significant weightlifting restriction.  Moreover, Dr.

> [Perdomo] limited the claimant to no more than 2 to 3 hours of
> walking and standing in an 8-hour day, but again, did not
> provide a rationale for this level of limitation, considering that he
> found on exam that the claimant has normal lower extremity
> strength and normal gait and neurological findings.  Further, Dr.
> [Perdomo's] assessment is inconsistent with the State agency
> findings of record, who do provide specific functional analysis to
> support their overall findings.  For these reasons, Dr. [Perdomo's]
> assessment is not found to be generally persuasive.  However, it
> is noted, based on his finding with regard to slightly reduced grip
> strength (4/5) and concerns regarding repetitive use of the hands,
> the [ALJ] has incorporated a limitation in the [RFC] restricting
> the claimant to frequent handling, fingering, and feeling.

(*Id.*)

As shown above, the ALJ found Dr. Perdomo's opinions to be unsupported by his own examination findings and inconsistent with the State agency doctors' opinions.  The ALJ's findings are supported by substantial evidence.  As the ALJ noted, Dr. Perdomo's examination indicated normal strength, gait, sensation, and neurological exam, but, without an explanation, he limited Plaintiff to five pounds of lifting and two to three hours of walking and standing.  (*Id.*; *see also* Tr. 845-46 (noting Plaintiff was in no acute distress; she was seen walking down the hallway without any difficulty and without requiring an assistive device for ambulation; she was able to get on and off the examining table without any problems; her physical examination was generally normal except for some limited range of motion of the upper extremities and the spine, 4/5 bilateral hand grip strength, painful bilateral wrist and elbow range of motion, painful bilateral knee and ankle movement,

26

and positive straight leg raising test).)  Nevertheless, in order to
accommodate Dr. Perdomo's concerns about repetitive hand use and 4/5 grip
strength, the ALJ limited Plaintiff to frequent handling, fingering, and
feeling.  (*Id.*)

Further, the ALJ properly found Dr. Perdomo's opinions to be
inconsistent with the State agency doctors' opinions that limited Plaintiff to
light work.  The ALJ observed that the State agency doctors' "findings were
well supported with citations to the medical record," were "generally
supported by the claimant's limited and generally conservative treatment,"
and were "also consistent with the claimant's findings on exam that
reflect[ed] findings of generally normal strength and normal gait with
generally normal range of motion of the upper and lower extremities."  (*Id.*)
However, based on subsequently submitted evidence and Plaintiff's
testimony, the ALJ assessed greater postural and manipulative limitations
than the State agency doctors in order to accommodate Plaintiff's bilateral
carpal tunnel syndrome,[12] cervical and lumbar degenerative disc disease, and
pain secondary to fibromyalgia.  (Tr. 29-30.)  Also, considering Plaintiff's
testimony regarding difficulty with prolonged sitting and standing due to

---

[12] The ALJ also noted in her decision that she had considered Plaintiff's
"reports of hand numbness and pain symptoms," even though Plaintiff did not have
specific treatment related to her carpal tunnel syndrome during the adjudicated
period.  (Tr. 27.)

pain, the ALJ incorporated a sit/stand option into her RFC assessment. (Tr.

30.) As the ALJ assessed a more restrictive RFC than the State agency

doctors, the ALJ found those assessments to be "only partially persuasive."

(*Id.*) Plaintiff does not seem to argue that it was error to do so. Instead,

Plaintiff argues that the ALJ failed to consider the consistency among the

opinions or findings of Dr. Perdomo, Dr. Gonzalez, and Dr. Torres.

Contrary to Plaintiff's argument, the ALJ adequately considered the

records and findings of all of these doctors. The ALJ did not find Dr.

Gonzalez's assessment to be persuasive for the following reasons:

> Dr. Gonzalez's assessment has the claimant as non-weight
> bearing, but there is very limited evidence that the claimant was
> ever non-weight bearing during the adjudicated period and Dr.
> Gonzalez himself says [Plaintiff] presented without an
> ambulatory aide for the evaluation, and she denied using an
> assistive device, suggesting that she was able to ambulate. (See
> 15F/2). Further, Dr. Gonzalez finds the claimant has reduced
> strength in her extremities, which is inconsistent with her other
> exams of record, which support normal strength. (See 20F/14-15
> and 32F/2-9). Additionally, his assessment is vague in nature
> and not specifically stated in functionally relevant terms and he
> also recommended a follow-up assessment based on her acute
> issues at the time of the exam.

(Tr. 28.)

The ALJ's findings are supported by substantial evidence in the record.

As the ALJ noted, "there is very limited evidence that the claimant was ever

non-weight bearing." (*Id.*; *see also* Tr. 442 (noting normal gait and stance);

Tr. 446 (noting normal gait and stance); Tr. 449 (noting normal gait and

28

stance); Tr. 476 (noting normal gait); Tr. 481 (noting normal gait); Tr. 485 (noting normal gait); Tr. 646 (noting normal gait); Tr. 875 (noting normal gait); Tr. 845 ("She was seen walking down the hallway without any difficulties and she did not require an assistive device for ambulation.").)  In fact, Dr. Gonzalez noted that Plaintiff arrived unassisted and "used nothing for ambulation assistance."  (Tr. 570.)  Also, unlike Dr. Gonzalez's finding of reduced extremity strength, the other exams of record support normal strength.  (Tr. 28; *see also* Tr. 646-47, 899, 907-08, 946, 951, 956-57, 971-72; *but see* Tr. 846 (noting 4/5 grip strength).)  Further, as the ALJ noted, Dr. Gonzalez's assessment was not specifically stated in functionally relevant terms and he recommended a follow-up assessment based on Plaintiff's acute issues at the time of the exam.  (Tr. 28; Tr. 574 ("Patient is limited in functional mobility at a reasonable pace, she will likely need further reevaluation upon complete healing from acute issues. . . .  Patient's ambulation distance is limited, most likely due to non-weight bearing status, and needs to be reevaluated at a later time.").)

    In assessing the RFC, the ALJ also considered Dr. Torres's findings.  (Tr. 27.)  The ALJ stated, in relevant part:

> On December 21, 2021, the claimant underwent a consultation
> for pain symptoms reported in her mid-back, low back, and neck
> which she alleged radiated to her legs and arms.  (28F/2-4).  She
> was started on pain medications, including a Medrol dosepak and
> Baclofen. . . .  Further, in April 2022, the claimant underwent a

cervical epidural steroid injection.  (33F/2-5).

On May 24, 2022, at a pain management appointment[,] the claimant was noted to have had a negative straight leg raise test on exam, lower back [sic] and muscle spasm and tenderness, and a decreased pinprick sensation in the L5 dermatome.  (See 35F). A lumbar MRI was ordered, and she was started on Tylenol 3s [sic] for pain symptoms along with Mobic.  (Id.).

(Tr. 27; *see also* Tr. 28 (reciting some of these records again).)  However, Dr. Torres did not render a medical opinion and his physical examination findings on December 21, 2021, April 12, 2022, and May 24, 2022 were largely unremarkable except for muscle spasm and tenderness, decreased sensation, and decreased cervical and lumbar range of motion during some of these visits.  (*See* Tr. 899-900, 957, 972.)

Based on the foregoing, the ALJ's consideration of Dr. Perdomo's opinions was supported by substantial evidence and "comported with the requirements of the new Social Security Regulations because the ALJ articulated the evidence affecting the supportability and consistency of the opinion[s]."  *Cook*, 2021 WL 1565832 at *5.  The ALJ's consideration of the State agency doctors' assessments, Dr. Gonzalez's findings, and Dr. Torres's records was also based on correct legal standards and supported by substantial evidence in the record.

Turning to the second argument on appeal, the ALJ's consideration of Plaintiff's subjective complaints was adequate and supported by substantial

evidence.  The ALJ found that while Plaintiff's medically determinable

impairments could reasonably be expected to cause some of the alleged

symptoms, her statements concerning the intensity, persistence, and limiting

effects of those symptoms were "not entirely consistent with the medical

evidence and other evidence in the record." (Tr. 27.)  The ALJ summarized

Plaintiff's testimony, the objective medical evidence, and the opinions of

record in determining the RFC.  (Tr. 26-31.)  The ALJ specifically addressed

Plaintiff's fibromyalgia and chronic pain syndrome as follows:

> The record supports the claimant was also assessed with
> fibromyalgia and chronic pain syndrome. (7F and 35F).
> Treatment notes from 2019 reflect the claimant was prescribed
> Neurontin and Cymbalta to treat fibromyalgia symptoms. (4F/2-
> 5).  Further, in January 2020, the record supports the claimant
> was participating in rheumatology treatment and underwent an
> evaluation for polyarthritis or possible connective tissue disease.
> (7F/2-4).  At that time, she reported her Neurontin medication
> had not been working as well as it had in the past. (Id.)  In
> February 2020, the record reflects the claimant had a weakly
> positive ANA result, but otherwise normal blood results and it
> was not found that the work-up supported a specific rheumatic
> disorder. (7F/5-6).  She also underwent multiple x-rays of the
> right shoulder, right hand, left shoulder, and left hand, all of
> which were negative. (See 18F/18-19 and 25F/22-23).  On June
> 17, 2020, at a primary care appointment, the claimant was noted
> to have had normal range of motion of all muscle joints. (11F/10).
>
> Thus, she was prescribed Mobic for pain symptoms and also
> advised to continue gabapentin treatment. (Id.)  On March 9,
> 2021, the claimant had repeat testing done related to
> inflammatory arthritis and was noted to have had stiff
> movements of the shoulders bilaterally. (17F/7-8).  However, on
> exam, she reported only 4/18 tender points. (Id.).  At her follow-
> up appointment in April 2021, the ANA was again positive, but

all remaining blood work was within normal limits. (17F/10). Additionally, updated x-rays of her left hand and wrist were also negative. (See 16F/2-3). She was again advised to continue medications and pain management treatment. (17F/10). On October 19, 2021, the claimant reported 4/18 tender points and she was noted to have had negative Tinel's and Phalen's signs on exam, with good motor power. (25 F/13-14).

More recently, on March 9, 2022, the claimant requested an increase in her gabapentin dosage; however, on exam, she was noted to have had normal bilateral upper and lower strength; no edema; and normal sensory exams of the upper and lower extremities. (Id.). Her gabapentin dosage was increased. (32F/2-3). Additionally, at her appointment in May 2022, as discussed above, the claimant was assessed with chronic pain syndrome and noted to have had muscle spasm and tenderness, but negative straight le[g] raise test. (35F). No further or more extensive treatment is supported by the record for the claimant's pain symptoms.

(Tr. 27-28.) The ALJ also considered Plaintiff's pain and fibromyalgia in her assessment of the medical opinions and prior administrative medical findings. (*See* Tr. 28-30.)

Notably, the ALJ did not completely dismiss Plaintiff's complaints, but instead included them in the RFC to the extent they were consistent with the evidence as a whole. (Tr. 30.) The ALJ stated:

Specifically, based on her impairments, including lumbar and cervical impairments, fibromyalgia, bilateral carpal tunnel syndrome, inflammatory poly[-]arthropathy/positive ANA, and chronic pain syndrome, she has been limited to light exertional level work with postural and climbing limitations. Additionally, considering the claimant's cervical impairments, carpal tunnel syndrome, and fibromyalgia, the claimant has been further limited to frequently reaching overhead, pushing and/or pulling, handling, fingering, and feeling. With the bilateral lower

32

extremities, based on her lumbar impairment and fibromyalgia, she can frequently push and/or pull or operate foot controls. Moreover, considering her positive ANA findings and poly[-]arthropathy in combination with her chronic pain syndrome, the [ALJ] has also limited the claimant to occasional concentrated exposure to extreme cold, heat, and humidity. Moreover, considering all of her severe and non-severe impairments, the claimant has been further restricted to avoiding all exposure to unprotected heights and to occasional exposure to vibrations. Furthermore, as discussed above, due to her chronic pain symptoms, fibromyalgia, and cervical and lumbar degenerative disc disease, and considering the claimant's testimony regarding difficulty with prolonged sitting or standing, the claimant has been accommodated with an allowance to shift from a sitting to a standing position every 30 minutes for 1 to 2 minutes as long as she is not off task or has to leave the vicinity of the workstation.

(*Id.*)

The ALJ explained that the record did not fully corroborate Plaintiff's

allegations of physical health symptom severity as follows:

As detailed above, the record supports the claimant participated in outpatient conservative treatment (pain medication and injections) for her lumbar and cervical spine pain and she participated in medication treatment for fibromyalgia and her chronic pain syndrome. No further or more aggressive treatment is noted for these impairments during the adjudicated period. The record also supports, that although the claimant reported she spends most of her days in bed or lying down due to pain, her objective findings on exam revealed mild lumbar degenerative disc disease (18F/15) and evidence of degenerative disc disease at C5-C6 but showed no evidence of stenosis (3F/6). Imaging studies of her hands/shoulders throughout the adjudicated period were largely negative (See 18F/18-19 and 25F/22-23). Further, on exam, other than one consultative exam noting reduced extremity strength (15F), the claimant was generally found to have had normal strength with a slightly reduced handgrip due to pain (4/5), normal gait, and generally normal sensation, reflexes, and neurological findings. (5F/3-6, 11F/10, 24F, 29F/5-7, and 32F/6-

33

9).

(Tr. 31.)

As shown above, the ALJ provided explicit and adequate reasons, supported by substantial evidence,[13] for her evaluation of Plaintiff's subjective complaints. Contrary to Plaintiff's argument, the ALJ explicitly considered her fibromyalgia and chronic pain syndrome, along with the other severe and non-severe impairments. The ALJ's RFC assessment accounted for Plaintiff's impairments and resulting limitations to the extent they were supported by and consistent with the record as a whole. To the extent Plaintiff argues that greater limitations should have been assessed in light of

---

[13] For instance, Plaintiff generally reported a pain level of 0 to 5, worse with exercise and long-distance walking. (Tr. 389-90, 394, 399, 403-04, 485, 646; *but see* Tr. 635 (noting a pain level of 6 during a flare-up); Tr. 431 (reporting a pain level of 7); Tr. 898 (reporting a pain level of 8); Tr. 863 (reporting a pain level of 9).) Notably, her examinations typically did not have abnormal findings. (Tr. 396, 405, 647, 653, 899-900, 907-08, 947, 951; *see also* Tr. 631 (noting functional range of motion in the upper and lower extremities).) In addition, Plaintiff's diagnostic test results were largely negative. (Tr. 577 ("Negative lumbosacral spine."); Tr. 578 ("Negative left hand."); Tr. 579 ("Negative left wrist."); Tr. 606-08 ("Mild L5-S1 degenerative change."); Tr. 752-55 ("Mild L5-S1 degenerative change."); Tr. 867-69 ("Mild L5-S1 degenerative change."); Tr. 610-12 (noting normal right and left shoulder series and right and left hand series); Tr. 870-73 (noting normal right and left shoulder series and right and left hand series).) Further, when Plaintiff was evaluated for polyarthritis and possible connective tissue disease, 2/18 or 4/18 tender points were noted on examination and rarely there were positive paraspinal tender points. (Tr. 428, 431, 864; *but see* Tr. 589 (noting 6/18 tender points but negative paraspinal tender points).) As the ALJ noted, Plaintiff's ANA test result was "very weakly positive" and her work-up was "not pointing towards any specific connective tissue disease or rheumatic disorder." (Tr. 432; *see also* Tr. 586 (noting "a weak positive ANA test"); Tr. 614 (same).) On July 7, 2021, Plaintiff reported improvement with Duloxetine despite having generalized aches and pains due to fibromyalgia. (Tr. 768.)

the consultative opinions of Drs. Perdomo and Gonzalez, and the examination findings of Dr. Torres, the Court has already determined that the ALJ properly evaluated the medical opinion evidence and prior administrative medical findings.  The ALJ did not need to incorporate into the RFC assessment any findings that were properly rejected.

### III.    Conclusion

The Court does not make independent factual determinations, re-weigh the evidence, or substitute its decision for that of the ALJ.  Thus, the question is not whether the Court would have arrived at the same decision on *de novo* review; rather, the Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence.  Based on this standard of review, the ALJ's decision that Plaintiff was not disabled within the meaning of the Social Security Act for the time period in question should be affirmed.

Accordingly, it is **RECOMMENDED**:

1.    The Commissioner's decision be **AFFIRMED**.

2.    The Clerk of Court be directed to enter judgment accordingly, terminate any pending motions, and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on January 29, 2024.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

The Hon. Roy B. Dalton, Jr.
United States District Judge

Counsel of Record